UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CANDACE DODSON                                                                                              PLAINTIFF

V.                                          No. 4:21-CV-60-BRW-JTR

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration[1]                                                              DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### I.   Introduction

Plaintiff, Candace Dodson ("Dodson"), applied for Title II disability and disability insurance benefits on September 24, 2018. (Tr. at 22). On the same date, she filed a Title XVI application for supplemental security income benefits. *Id*. In

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

both applications she alleged that her disability began on June 26, 2018. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied both applications in a decision dated March 26, 2020. (Tr. at 36). The Appeals Council denied Dodson's request for review on November 23, 2020, making the ALJ's denial of Dodson's application for benefits the final decision of the Commissioner. (Tr. at 1).

For the reasons stated below, this Court should reverse the ALJ's decision and remand for further review.

## II.   The Commissioner's Decision

The ALJ found that Dodson had not engaged in substantial gainful activity since the alleged onset date of June 26, 2018.[2] (Tr. at 24). At Step Two, the ALJ found that Dodson had the following severe impairments: degenerative disc disease of the lumbar spine-post discectomy, osteoarthritis of the bilateral knees, seizure disorder, migraine headaches, obesity, major depressive disorder, fibromyalgia, bipolar disorder, and chronic pain syndrome. *Id*.

---

[2] The ALJ followed the required five-step analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment (Listing); (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

After finding that Dodson's impairments did not meet or equal a listed impairment (Tr. at 25), the ALJ determined that Dodson had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, with additional limitations: (1) she can never climb ladders, ropes or scaffolds, and can only occasionally climb ramps and stairs; (2) she can only occasionally balance, stoop, kneel, crouch, and crawl; (3) she cannot operate foot controls with the lower extremities; (4) she can have no concentrated exposure to fumes, odors, or gases; (5) she is limited to simple, routine, and repetitive tasks, where the supervision would be simple, direct, and concrete; (6) she is limited to jobs with an SVP of 1 or 2 that can be learned within 30 days, with no more than occasional changes to the workplace setting required.[3]  (Tr. at 28–29).

The ALJ determined that Dodson was unable to perform any of her past relevant work. (Tr. at 34). At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Dodson's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform, including positions as fishing reel assembler, printed circuit

---

[3] The SVP (specific vocational profile) level listed for each occupation in the DOT connotes the time needed to learn the techniques, acquire the information, and develop the facility needed for average work performance. At SVP level one, an occupation requires only a short demonstration, while level two covers occupations that require more than a short demonstration but not more than one month of vocational preparation. *Hulsey v. Astrue*, 622 F.3d 917, 923 (8th Cir. 2010); Dictionary of Occupational Titles app. C, at 1009 (4th ed. 1991).

board checker, and eyeglass frame polisher. (Tr. at 36). Thus, the ALJ concluded that Dodson was not disabled. *Id*.

### III.   Discussion

A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B.  Dodson's Arguments on Appeal

Dodson contends that the evidence supporting the ALJ's decision to deny her application for benefits is less than substantial. She argues that: (1) the ALJ failed to properly evaluate the opinion of Dodson's treating neurologist; and (2) the ALJ did not fairly consider Dodson's subjective complaints. For the following reasons, the Court finds support for reversal.

At the outset, the Court takes up Dodson's technical argument made in conjunction with her first point of appeal. She essentially alleges that the Commissioner lacks rulemaking authority, and must bend to precedent established by federal courts, rather than issue its own regulations. This argument fails.

Congress granted the Commissioner exceptionally broad rulemaking authority under the Social Security Act ("Act") to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to

regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration.").

Dodson's rulemaking argument arises out of how medical opinions are evaluated. Federal courts have long recognized that, in Social Security cases, a treating physician's opinion may be granted substantial weight if supported by the record. *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016). In 1991, the Commissioner adopted regulations approving and formalizing use of this "treating physician" rule. See 56 Fed. Reg. 36961, 36968; 20 C.F.R. § 404.1527(c)(d).

With changes in the way healthcare is delivered and greater reliance on non-MD providers to treat patients, the Commissioner deemed it necessary to supplant the treating physician rule with a new regulatory scheme with respect to provider opinions. On January 28, 2017, the Administration promulgated these new regulations governing how ALJs assess medical opinion evidence. See 20 C.F.R. § 404, 1520c(a)–(c) (2017). The new rules, with an effective date of March 27, 2017, prohibit ALJs from deferring to or giving any specific weight, including controlling weight, to any medical opinions, including those from the claimant's treating physicians. *Id*. Instead, the focus is on whether an opinion is persuasive, based on:

(1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes: (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)–(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017). *See Phillips v. Saul*, No. 1:19-CV-34-BD, 2020 WL 3451519, at *2 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*.

Dodson plays both sides here: she argues that the treating physician rule, codified by the Commissioner in 1991, should apply to her case, rather than the new 2017 regulation, because federal precedent for years applied the treating physician rule. In support of her argument, she cites to two Fourth Circuit cases from 1966 and one 1961 case from the Western District of Michigan. *Doc. 12 at 11*. She appears to approve of the 1991 codification but disapprove of the 2017 codification. In sum, she argues that the ALJ improperly discounted the opinion of Dr. David Oberlander, M.D., Dodson's treating neurologist.[4]

---

[4] The Eighth Circuit has settled that the 2017 regulation concerning provider opinions applies in Social Security cases. *Bonnett v. Kijakazi*, 859 Fed. Appx. 19, 20 (8th Cir. 2021) (outlining the 2017 regulation and remanding when the ALJ failed to follow its requirements); *Pemberton v. Saul,* 953 F.3d 514, 517 n.2 (8th Cir. 2020). And this District has recommended that the argument made by Dodson above does not have merit. *Jarmon v. Kijakazi*, No. 4:21-CV-32-BSM-JJV *7–9 (E.D. Ark. Jan. 5, 2022) (Magistrate Judge's Recommended Disposition under

Notwithstanding Dodson's argument about regulatory authority, Dodson is right that the ALJ did not properly evaluate Dr. Oberlander's opinion. On March 14, 2019, Dr. Oberlander completed a Treating Physician's Migraine Headache Form, stating that Dodson experienced one-to-two migraines a week, accompanied by an aura, phonophobia, and photophobia. (Tr. at 1327). He said that she had used emergent care for her migraines in the last 12 months and was taking Imitrex and Topamax. *Id*. He said that her migraines interfered with Dodson' ability to work and that she would miss one day of work per week due to migraines. *Id*. There is reason to credit Dr. Oberlander's opinion.

The ALJ found migraine headaches to be a severe impairment, and Dodson suffered from chronic pain throughout the relevant time-period. The record contains numerous clinic notes citing complaints of severe radiating neck and back pain, and after two lumbar discectomies in 2018, Dodson still had unrelenting back pain. (Tr. at 530–560, 589–585, 677–695, 732–741, 1185, 1232–1238). Two lumbar MRIs from mid-2019 showed complete effacement of the neural foramen and significant compression of the exiting L5 nerve root, with L5 neuritis, as well as annular tear

---

consideration by District Court) (Congress delegated rulemaking authority to the Commissioner); see *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 865–66 (1984).

and foraminal disc protrusion (Tr. at 1411, 1429, 1440).[5] This was, of course, after, two back surgeries.

Dodson saw Dr. Oberlander regularly in 2018 and also once in 2020, for treatment of migraines and seizures. He often noted that the migraines were intractable and that they were aggravated by bright lights and noise. (Tr. at 548-560). He prescribed Topamax and restricted Dodson from driving due to occurrences of seizures. *Id*. In June 2018 and August 2018, Dr. Oberlander noted that Dodson was in obvious pain; she had a positive straight-leg raise as well. *Id*.

At various appointments with multiple providers in 2019, Dodson still complained of headaches and she was still treating with Topamax. (Tr. at 1382–1399). In early 2019, Dodson's mental health therapist noted severe pain with decreased mobility and decreased sleep quality, as well as decreased ability to perform daily activities. (Tr. at 1220–1283). In October 2019, the therapist observed the same. (Tr. at 1331–1336). At her pain management clinic from March 2019 through December 2019, Dodson complained of headaches with numbness and memory problems. (Tr. at 1616–1633).

On January 8, 2020, Dodson underwent right knee surgery. (Tr. at 1455). While still in the hospital, she had a flurry of seizures and was given an IV of Keppra

---

[5] Lumbar nerve impingement can contribute to chronic headaches. https://www.houstonpainspecialists.com/blog/that-chronic-headache-could-be-the-result-of-a-back-or-neck-injury; https://sperlingmedicalgroup.com/can-headaches-come-from-lower-back-pain

plus increased Topamax. (Tr. at 1455–1463). At a January 29, 2020 appointment with her pain management doctor, Dodson said she was having seizures every day and she complained of headaches in spite of taking Topamax. (Tr. at 1638–1651). Her doctor told her not to drive. *Id*. At that appointment, she said that Dr. Oberlander would not see her. *Id*.

The ALJ discussed Dr. Oberlander's opinion about Dodson's migraines and found it to be unpersuasive. (Tr. at 33). He incorrectly stated that the record "is absent of persistent treatment for headaches." *Id*. On the contrary, Dodson complained of pain and headaches throughout 2018 and 2019 and took medicine regularly. Another reason the ALJ gave for discounting Dr. Oberlander's statement was that "Dodson's last seizure activity was in 2018," when in fact, she suffered numerous seizures in January 2020, records of which were before the ALJ. (Tr. at 33, 42). And the ALJ said that Dr. Oberlander's statement was not supported by his own treatment notes; but, Dr. Oberlander's treatment notes reflected chronic pain and intractable migraines with photophobia and phonophobia, plus treatment with Topamax. The ALJ improperly discounted the opinion that Dr. Oberlander authored about Dodson's migraine headaches.[6]

---

[6] Two Disability Determination services medical experts reviewed the records in December 2018 and July 2019 and found that Dodson was capable of sedentary work, but the only reference they made to headaches was that she had no ER or office visits for acute headaches. (Tr. at 117, 156). Certainly, she reported acute headaches to both Dr. Oberlander and her pain management specialist, as noted above, and Dr. Oberlander stated that she had been to the ER for

Notably, the ALJ did not mention another opinion that Dr. Oberlander issued about seizures. In March 2019, Dr. Oberlander filled out a Treating Physician's Report for Seizure Disorder, wherein he noted that Dodson convulsed and lost consciousness when she had seizures. (Tr. at 1325). While Dr. Oberlander did not offer any functional capacity conclusions on that form, the ALJ could have taken note, especially since Dodson needed IV medication due to multiple seizures in January 2020. The ALJ's incorrect statement that Dodson suffered her last seizure in 2018 undermines his analysis.[7]

## IV. Conclusion

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ erred in his evaluation of Dr. Oberlander's opinion.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review, including further development of the record with respect to Dodson's seizure and migraine conditions if necessary (including consultative examinations), given more recent exacerbations.

---

headaches. (Tr. at 1327). The ALJ did not resolve why those medical opinions were "generally persuasive" but Dr. Oberlander's opinion was not. (Tr. at 32).

[7] There is one notation in the 1600-page record that Topamax helped with Dodson's seizures and headaches. (Tr. at 1472). But the balance of the treatment record shows that Dodson experienced chronic headaches, which Dr. Oberlander classified as "intractable." (Tr. at 550–560).

11

DATED this 1st day of March, 2022.

                                            _____
                                            UNITED STATES MAGISTRATE JUDGE